## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN AMESER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | |
| **NORDSTROM, INC.,** | § | **3:09-CV-0395-G** |
| | § | |
| **Defendant.** | § | **ECF** |

***

## PLAINTIFF'S AMENDED MOTION TO VACATE ARBITRATION AWARD
## AND BRIEF IN SUPPORT

***

**KILGORE & KILGORE, PLLC**


By:  John H. Crouch, IV
      State Bar No. 00783906

3109 Carlisle Street, Suite 200
Dallas, TX 75204
(214) 969-9099 - Telephone
(214) 953-0133 - Fax

**ATTORNEYS FOR PLAINTIFF**
**JOHN AMESER**

**TABLE OF CONTENTS**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     General Background Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.      Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.      The Court should set aside the Award for evident
                partiality by the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                1.      Harmon's partiality is evidence from her material
                        non-disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                2.      Harmon's partiality on migraines is evident from
                        her ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                3.      Statistical evidence shows systematic bias by
                        AAA arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                4.      Harmon's refusal to take an oath creates the appearance
                        of bias . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.      The Award was obtained by undue means . . . . . . . . . . . . . . . . . . . . . . 18

        C.      The Award should be vacated for exceeding Arbitration
                powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        D.      The Award should be vacated for Arbitrator misbehavior . . . . . . . . . . . . . . 21

        E.      The Award violates public policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Signature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

### FEDERAL CASES:

Ameser v. Nordstrom, Inc., Cause No. 09-10424 (5th
Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Brabham v. A.G. Edwards & sons, Inc., 376 F.3d 377,
380-81 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19, 20

Burlington Northern Railroad Company v. TUCO, Inc.,
960 S.W. 2d 629 (Tex. 1997)_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Chaffin v. John H. Carter Co., 179 F.3d 316, 319
(5th Cir. 1999) *overruled in part on other grounds* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Chevron U.S.A. Inc.v. NRDC, 467 U.S. 837, 844,
104 S.Ct. 2778, 2782, 81 L.Ed. 2d 694 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349 (5th
Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Commonweath Coatings Corp. v. Continental Casualty
Co., 393 U.S. 145, 149, 89 S. Ct. 337, 339, 21 L.Ed 2d
301 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Delta Queen Steamboat Co. v. District 2 Marine Eng'rs
Beneficial Ass'n, 889 F.2d 599, 604 (5th Cir. 1989),
*cert. Denied*, 498 U.S. 853, 112 L.Ed.2d 114, 111 S.Ct.
148 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Diaz v. Fort Wayne Foundry Corp, 131 F.3d 711, 712-13
(7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Executone Info. Sys. v. Davis, 226 F.3d 1314, 1325
(5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

First Options, 514 U.S. at 942 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Gilmer v. Interstate/Johnson Lane Corp., 500 U.s. 20
(1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Haley v. Alliance Compressor, LLC, 391 F.3d 644, 649
(5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hall Street Association, L.L.C. v. Mattel, Inc., 128 S.Ct. 1396,
170 L.Ed.2d 254 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re: Poly-America, L.P., 262 S.W. 3d 337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Lubke v. City of Arlington, 455 F.3d 489, 497-98
(5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mariner Financial Group, Inc. v. Bossley, 79 S.W.3d 32,
35 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

McArdle v. Dell Prods., L.P., 293 Fed. Appx. 331, 339
(5th Cir. Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mellen v. Trs. of Boston Univ., 2007 U.S. app. LEXIS 22518,
12-13 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Nero v. Indus. Molding Corp., 167 F.3d 921, 927 (5th Cir.
1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Porch v. Dillard's Inc., 2004 U.S. Dist. LEXIS 22723,
2004 WL 1809813, at *6(N.D. Tex. Aug. 12, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Prestige Ford v. Ford Dealer Computer Services, 324 F.3d
391,396 (5th Cir.), *cert. denied*, 540 U.S. 878 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 24

Sabbrese v. Lowe's Home Ctrs., Inc., 320 F.Supp. 2d
311, 327 N. 14 (D.Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Sarofim v. Trust co., 440 F.3d 213, 219 (5th Cir.
Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Totem Marine Tug & Barge, Inc. v. North American
Towing, Inc., 607 F.2d 649, 651 (5th Cir. La. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United Steelworkers of America v. Enterprise Wheel and
Car Corp., 363 U.s. 593, 597, 80 S. Ct. 1358, 4 L.Ed. 2d
1424 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Williams v. Cigna Fin. Advisors, 197 F.3d 752, 758 (5th
Cir. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766,
103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## STATE CASES:

In re: Halliburton Co., 80 S.W.3d 566 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## FEDERAL

9 U.S.C. §10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . 1

Age Discrimination and Employment Act of 1967,
19 U.S.C. §621 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Americans with Disabilities Act of 1990, 42 U.S.C. §12101,
*et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. §2612(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 C.F.R. §825 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 U.S.C. §2613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 C.F.R. §825 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

29 U.S.C. §626 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOHN AMESER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | |
| **NORDSTROM, INC.,** | § | **3:09-CV-0395-G** |
| | § | |
| **Defendant.** | § | **ECF** |

**PLAINTIFF'S AMENDED MOTION TO VACATE ARBITRATION AWARD**
**AND BRIEF IN SUPPORT**

TO THE HONORABLE COURT:

Now comes John Ameser, Movant in the above-referenced action, and applies to this Court

for an Order vacating an Arbitration Award under the Federal Arbitration Act, and in support thereof

would show the Court as follows:

I.

**Introduction**

Ameser brought an action alleging Nordstrom, Inc. ("Nordstrom") wrongfully fired him from

his job in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq* (the

"FMLA"), the Age Discrimination and Employment Act of 1967, 19 U.S.C. §621 *et seq* (the

"ADEA"), the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq* (the "ADA"), Title

VII and 42 U.S.C. §1981.  The claim was presented through Arbitration before the American

Arbitration Association (the "AAA") pursuant to a pre-employment dispute resolution policy.

Ameser brings this Motion to Vacate the Arbitration Award against him on numerous grounds,

including bias and misbehavior on the part of the Arbitrator, Melva Harmon, and violation of public

-1-

policy.

Plaintiff previously brought this Motion in State court, but Defendant removed. The Court declined to enter a default after Defendant failed to timely answer, and instead denied Plaintiff's original Motion "subject to refiling in this court." Docket No. 12. After taking appeal of this order in view of uncertainty as to whether such an amended motion would relate back for purposes of limitations, the Fifth Circuit Court of Appeals held such order to be interlocutory in nature. *Ameser v. Nordstrom, Inc.,* Cause No. 09-10424 (5th Cir. 2010), App. p. 228. Accordingly, Plaintiff files this his Amended Motion to Vacate.

II.

## Parties

Claimant John Ameser is an individual residing  at 3416 Garner Lane, Plano, Texas 75023.

Respondent Nordstrom, Inc. ("Nordstrom") is a corporation with its headquarters located in Seattle, Washington. Respondent Nordstrom, Inc. has appeared of record, and may be served with process by and through its counsel as indicated below.

III.

## Jurisdiction

This Court has jurisdiction to hear this motion, since the underlying claims involve Federal subject matter jurisdiction.

IV.

## General Background Facts

Nordstrom owns a chain of high-end department stores operating throughout the United States with its Headquarters in Seattle, Washington. Ameser was employed at the Nordstrom store in Texas located at 2316 Preston Road, Frisco, Texas 75034. App. p. 175.

Nordstrom hired Ameser on approximately April 6, 2004, to work as a salesperson in the Salon Woman's Shoe Department.  Ameser worked full time thereafter at Nordstrom's Stonebriar Mall location in Frisco, Texas until his termination. App. p. 175.

In approximately July of 2006, Ameser began suffering from a series of migraine headaches, which caused him to file for intermittent FMLA leave and miss work intermittently for approximately 12 days from July 2006 to December 2006.  Additionally, Ameser was out on FMLA leave part or all of 6 days in January, 2007; 1 day in May, 2007; 2 days in June, 2007; and 1 day in July, 2007 before his termination on July 23, 2007. App. p. 176.

In February of 2007, after missing all or part of 6 FMLA intermittent leave days in January, management began to retaliate against him by criticizing his work, and lowering his performance appraisals.  Among the criticisms were the allegation that "Ameser missed several scheduled shifts this past year.  It affects the whole team when someone does not show up for their scheduled shifts." App. p. 176.

In addition to his migraine condition, Ameser also suffers from Attention Deficit Disorder ("ADD").  Ameser's condition can cause him to be impulsive and distracted, which conditions worsen when he works long periods without time off. On our about May 23, 2007, Ameser requested a reasonable accommodation of fixed days off interspersed during the week in order to mitigate symptoms from his ADD.  After contacting Ameser's doctor, Nordstrom agreed to the requested schedule change, allowing him to take Tuesdays, Thursdays, and Sunday mornings off. App. p. 176.

On or about Saturday, July 21, 2007, Ameser was harassed by co-worker Merryl Wayne. Wayne was upset with Ameser because she had to work the previous Thursday night getting ready for a weekend sale, and Ameser did not because of his medical condition.  Ameser was upset by the incident, which led to further stress as he had to work with her the following day.  App. p. 176.

This stress was exacerbated the following day, when Assistant Manager Timothy Ho referred to Ameser as an "idiot" when he attempted to help a customer who was, unknown to Ameser, already being assisted by Ho's girlfriend.  Such an insult also impacts Ameser in terms of his ADD, since symptoms of that condition include impulsiveness, difficulty in concentrating and with attention to detail.  Ameser felt the onset of a migraine, which can be triggered by stress. On or about Sunday, July 22, 2007, Ameser left early due to a migraine headache. The migraine was not foreseeable.  Ameser notified assistant manager Tim Ho, his immediate supervisor, of his migraine and left work.  Ho tried to stop Ameser from leaving, but Ameser left, believing it better to avoid an argument which might exacerbate the migraine, and so that he could get home before full onset of symptoms left him incapacitated at work. App. p. 177.

When he returned to work the next day, Ameser delivered a written complaint about Wayne's harassing behavior to Store Manager Jason Young's mailbox.  The complaint specifically references the fact that he had previously sought a reasonable accommodation for his ADD, and that Wayne had harassed him for receiving and taking a reduced schedule under that statute. App. p. 177.

Ameser was fired the same day he made the complaint on or about July 23, 2007.  His Department Manager, Peter Gruber, (approx. age 26) indicated in the termination memo that a motivating reason for the termination was that: "John left his shift early by telling a manager, Timothy Ho, and another salesperson that he had a migraine headache." The memo further states that: "Because of the continued status of ... timeliness, I am terminating John [Ameser's] employment immediately." App.  p. 1.

Gruber also cited unprofessional conduct as a reason for the termination, but this allegation is mere pretext, because younger, non-disabled and non-FMLA employees regularly engaged in unprofessional conduct far worse than anything Ameser engaged in without discipline.  For example,

-4-

Ameser had previously complained that Gruber had threatened to break Ameser's neck on or about September 27, 2006 if he failed to sell a shoe, and threatened to kill another employee on or about October 28, 2006, yet Gruber continued to work and was thereafter promoted. App. pp. 177-78.

Timothy Ho's complaints were also likely motivated by age discrimination. Timothy Ho had previously referred to Ameser as "slow and old" on at least 4-5 occasions. Additionally, supervisor Jonathon Tatum had referred to Ameser as "old" or an "old man" without correction from higher level managers. Co-worker Mel Stupp, approximately 67 or 68 years old, was also frequently referred to as "old man." App. p. 178.

During the pendency of the arbitration, Nordstrom indicated that a motivating reason for his termination relates back to an incident on or about July 11, 2006, when Ameser was reprimanded for opposing racial discrimination. In particular, Ameser opposed a supervisor giving special discounts and treatment to white customers, but not to black ones. Thus, Nordstrom has retaliated against Ameser for opposing illegal conduct under Title VII and 42 U.S.C. §1981.

V.

**Procedural Background**

Nordstrom maintained a mandatory Dispute Resolution Program as part of its employment policies and procedure, which includes mandatory arbitration of employment disputes with the AAA. Nordstrom represented to its employees that the AAA "is considered a leading resource in administering fair, cost-effective resolution of work-related disputes." App. p. 108. It further represented that pursuant to the policy that arbitrators would "have no relationship to Nordstrom or its representatives" and that "the arbitrator must disclose any information that ... may create an appearance of bias." The program affirmatively represents:

The Nordstrom Dispute Resolution Program was created to help

> resolve our differences together in a fair and timely manner.  It also
> provides a process that protects your legal rights and allows for the
> same remedies and relief that would have been available to you had
> the matter been heard in court."

App. p. 66.

Ameser filed a Statement of Claim in Arbitration with the AAA pursuant to the Dispute

Resolution Program of Nordstrom on or about October 22, 2007, and the matter was put to hearing

under his Second Amended Statement of Claim, a true and correct copy of which is submitted

herewith as Appendix p. 85.  Nordstrom responded to Ameser's Statement of Claim, and proceeded

to the arbitration hearing based on the Amended Answer at Appendix p. 98.

After filing the case, the AAA sent out lists of potential arbitrators. The information

disseminated regarding the potential arbitrators is included at Appendix p. 76,  and did not include

any history of prior rulings by such arbitrators.  Respondent Nordstrom through its counsel objected

to every arbitrator on the list other than Melva Harmon, as indicated in a letter from its counsel dated

November 16, 2007.  The stated reason was that many of the arbitrators on the list were not from

Texas, and were not familiar with Fifth Circuit law, but Harmon was disclosed as practicing in Little

Rock, Arkansas, in the Eighth Circuit.  App. p. 77.

The AAA chose Harmon to act as arbitrator in the matter.  Harmon's initial disclosures

revealed no conflicts of interest or prior dealings with the parties or their representatives.   She

specifically attested "No" to the following questions:

> 3.     Have you had any professional or social relationship with
> counsel for any party in this proceeding or the firms for which
> they work?
>
> 9.     Have any of the party representatives, law firms or parties appeared before
> you in past arbitration disputes?

App. pp. 109-110.  However, Respondent's counsel Jay Wallace notified the AAA by letter dated

December 4, 2007 that he had previously arbitrated a matter with Harmon.  App. p.  81.  In response to this letter, Ameser's counsel requested additional information concerning the prior representation, including the nature of the previous claims, the names of the parties and counsel involved, information concerning the award and the dates of the arbitration by letter dated December 5, 2007, and specifically reserved his rights to object to Harmon's appointment pending receipt of the information.  App. p. 82.  Nordstrom objected to production of the information by letter dated December 6, 2007, and the information was never formally provided by the AAA.  This is despite the fact that the AAA's own Employee Due Process Protocol designed to insure the fairness of arbitrations concludes that arbitrators should be required to disclose the names of the representatives in the previous six cases they presided over to ensure fairness.  App. p. 73.  Ameser stood on the reservation of rights in his letter, and did not formally object to Harmon's selection at that time based in part on opposing counsel's oral and written representation that Harmon would be fair.

Harmon's duty to disclose potential conflicts was ongoing under AAA rules.  While Harmon did not disclose the prior dealings with Nordstrom's counsel, she did disclose that she had a prior history of migraines by letter dated January 4, 2008.  App. p. 84.  Harmon asserted at that time that she did not believe her prior history of migraines as a teenager and young adult would interfere with her ability to decide the case.  App. p. 84.

The Arbitration was conducted according to the Nordstrom Dispute Resolution Program, a copy of which can be found in the Appendix at p.64.  The Dispute Resolution Program requires in relevant part that:

> All decisions by the Arbitrator are required to be made according to the same principles of law that would control the decision in a court of law.  Arbitrators can award the same damages or remedies as a court of law.

App. p. 67.  Furthermore, the Dispute Resolution Program limits the discretion of the Arbitrator to

decisions based on evidence presented.  In particular, the program represents:

> **The Arbitrator makes a decision.**
>
> *Based on the evidence presented the Arbitrator will make a final and binding decision on all issues involved with every claim presented.* The Arbitrator's decision will be in writing and include a brief summary of all findings of fact and law necessary to support the Arbitrator's decision.   The Arbitrator can award to the winning person(s) the same recovery that they would be entitled to in a court of law (such an award will also be subject to the same limitations used by courts of law, such as statutory or constitutional limitations on compensatory and punitive damages).  Unless you and Nordstrom agree otherwise, the Arbitrator will make a final and binding decision after the hearing is closed.   The Arbitrator's Award can be entered with a court of competent jurisdiction, and the award shall have the same legally binding effect as if a court had rendered the judgment.

App. at p. 69.  (*emphasis added*).  Furthermore, the program provides:

> The Arbitrator is authorized only to decide covered claims and counterclaim(s), and his or her decision must comply with applicable local, state and/or federal law.  The Arbitrator is not authorized to modify the powers granted to him or her under this program, or to make any award merely on the basis of what he or she determines to be fair or just.

App. at p. 69.

The Arbitrator conducted a hearing under AAA rules beginning on September 16, 2008 and

lasting until the end of the day on September 17, 2008.  Ameser requested at the start of the hearing

that Harmon take an oath swearing she would act impartially, and faithfully execute her duties as

the presiding official the proceedings. App. at 180. Harmon refused, claiming she had already taken

such an oath when she registered as a potential panelist with the AAA.  App. at 180.

Thereafter, Harmon issued an "Award in the form of Findings of Fact and Conclusions of

Law" dated November 3, 2008.  The Award found in favor of Nordstrom on every claim, and

awarded Ameser nothing.  Further, in order to justify this Award in the face of conclusive evidence of FMLA and disability discrimination, the Arbitrator acknowledges in her Award that she disregarded the only competent evidence presented during the hearing in order to conclude that Ameser essentially made up his claim to be suffering from a migraine:

> The preponderance of the evidence in this case shows that Ameser did not leave work on July 22nd because he had a migraine headache, but because he was upset and angry at two employees.  Although he stated to Ho that he had a migraine and testified at trial that he was suffering from a migraine, his actions of pointing his finger and storming off in anger do not support his testimony.  Further his testimony is not credible as he claimed that warnings he received for absences or being tardy were because of migraine headaches when the records show this testimony is false.

App. pp. 8-9.  The Arbitrator's assertion that Ameser was faking a migraine because he was mad at his supervisor, Ho, is irrational, because the Arbitrator later finds that she believed Ho's testimony that Ho did not call Ameser an idiot, which was the only explanation for why Ameser was upset with Ho.  App. p. 5.

The Arbitrator's partiality is also demonstrated by her discussion of the medical findings in relation to Mr. Ameser.  The Arbitrator on page 11 of her decision concluded Ameser was not disabled, or regarded as disabled. App. p. 12.  In fact, Ameser's doctor confirmed he had substantial impairment to major life activities. App. at 179.  He provided medical documentation in the record that Ameser needed up to 6 days off per month for episodic migraine attacks. App. at 179, 113. He provided a written medical opinion opining Ameser was disabled.  App. at 179, 130.  His doctor's testimony was not rebutted by any medical expert or testimony for Nordstrom.  App. at 179.

VI.

**Standard of Review**

The Federal Arbitration Act provides several statutory grounds on which a District Court can

set aside an Arbitration Award.  These "statutory" grounds include:

(1)     where the Award was procured by corruption, fraud, or undue means;

(2)     where there was evident partiality or corruption in the arbitrators or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a); *Brabham v. A.G. Edwards & Sons, Inc.,* 376 F.3d 377, 380-81 (5th Cir. 2004).

In addition to the statutory grounds for vacating an arbitration award, the Fifth Circuit previously held that arbitration awards may be set aside if there is a manifest disregard of the law. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d at 381. The Fifth Circuit reversed this precedent in *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009), holding that the Supreme Court's recent decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) limited review to the four statutory criteria. *Id.* The Court there left open the question of whether the prior case law interpreting manifest disregard could be reinterpreted as a statutory assault on an award under 9 U.S.C. §§10(a)(3) and (a)(4). *Id.*

The Fifth Circuit previously recognized a district court may set aside an arbitration award using the "essence" test.  An arbitration award "must have a basis that is at least rationally inferable, if not obviously drawn from, the letter or purpose of the agreement.  If the Arbitrator's Award was "so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of an arbitrator,' then it may be

-10-

set aside." *Executone Info. Sys. v. Davis*, 226 F.3d 1314, 1325 (5th Cir. 1994).  Like manifest disregard for the law, this previous case law may also be reinterpreted as an attack under 9 U.S.C. §§10(a)(4).

Finally, the Fifth Circuit has previously held a court could refuse to enforce an arbitration award that is contrary to public policy.  *Prestige Ford v. Ford Dealer Computer Services*, 324 F.3d 391, 396 (5th Cir.), *cert. denied*, 540 U.S. 878 (2003).  The Fifth Circuit has not addressed the status of this ground post *Hall Street Associates, supra*.

VII.

**<u>Argument</u>**

The Arbitration Award should be set aside for numerous grounds detailed below.  The Award was the result of partiality on the part of the Arbitrator, was obtained by undue means, was in violation of the essence of the restrictions contained in the Arbitration Policy itself, evidences arbitrator misbehavior, and violates public policy.  The District Court should vacate the Arbitration Award and remand for a new hearing before an impartial arbitrator, or in the alternative, simply void the arbitration policy and allow Ameser to proceed anew in court.

**A.      The Court should set aside the Award for evident partiality by the Arbitrator.**

As previously noted, this Court may set aside an Arbitration Award for evident partiality on the part of an Arbitrator.  Furthermore, Ameser offers broader evidence that the AAA arbitration process is systematically partial toward employers, and was therefore procured by undue means.

1.      <u>Harmon's partiality is evident from her material non-disclosure.</u>

This particular Arbitrator, Melva Harmon, has engaged in at least one prior arbitration with opposing counsel, Jay Wallace. App. p. 81.  Harmon falsified her sworn initial disclosures by failing to apprise Ameser of this earlier litigation.  App. pp. 109-110.   Ameser learned of the prior

-11-

arbitration only through the incomplete disclosure of Nordstrom's counsel. App. p. 81.

Upon learning of the earlier arbitration, Ameser timely requested further information concerning the earlier procedure, and reserved his right to object to Harmon pending production of the information.  App. p. 82.  Nordstrom objected to production of the information. App. p. 112. The AAA never provided details of the earlier claims, including the identity of the parties or their counsel, so that reasonable investigation could be made. App. p. 181.   Given that Nordstrom's counsel objected to every other potential arbitrator submitted by the AAA, the appearance of partiality has been created.  App. p. 77.  Full investigation of such prior dealings is necessary to maintain the impartiality of the proceedings, as recognized by the Due Process Protocol published on the AAA Web site, which advises potential arbitrators should be required to disclose contact information for counsel to their previous six arbitrations to allow a full investigation of their impartiality.   App. p. 73.  Harmon has apparently now sided for Mr. Wallace's firm on every occasion an employment dispute has been brought before her, and failed to disclose such prior dealing.  Harmon has never found for an employee in four employment arbitrations. App. 188.  Such a record, particularly in light of the flagrant disregard of the evidence in this case, constitutes evidence of partiality under federal and state case law.

In the seminal case on the issue of arbitrator partiality, the United States Supreme Court held that a neutral arbitrator has a duty to disclose to the parties any dealings that might create an impression of possible bias. *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149, 89 S. Ct. 337, 339, 21 L.Ed.2d 301 (1968). In that case, the neutral arbitrator did not disclose that he had a significant business relationship with one of the parties. *Id*. at 146, 89 S. Ct. at 338. In construing the relevant statute, which authorized vacation of an arbitration award "where there was evident partiality . . . in the arbitrators," the Supreme Court concluded that the legislature

intended to provide for impartial arbitrations. *Id*. at 147, 89 S. Ct. at 338. Thus, even though there was no allegation that the arbitrator was actually biased, the Supreme Court reversed a trial court order refusing to set aside the arbitration award and admonished arbitrators to avoid even the appearance of bias. *Id*. at 150, 89 S. Ct. at 340.

The Texas Supreme Court has also addressed evident partiality of arbitrators. In *Burlington Northern Railroad Company v. TUCO, Inc.*, 960 S.W. 2d 629 (Tex. 1997), the Supreme Court discussed the different standards regarding failure to disclose applied by other state and federal courts since *Commonwealth Coatings*. 960 S.W.2d at 632-35. The Texas Supreme Court decided on a broad approach, holding that evident partiality is exhibited when a neutral arbitrator does not disclose facts that might create a reasonable impression of the arbitrator's partiality to an objective observer. 960 S.W.2d at 636. A neutral arbitrator has a duty of disclosure, and evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information establishes partiality or bias. 960 S.W.2d at 636-37.

In TUCO, the Supreme Court explained that to choose their arbitrators intelligently, the parties must have access to all information that might reasonably affect the arbitrator's partiality. 960 S.W.2d at 635. Thus, the Supreme Court cautioned that even though a neutral arbitrator need not disclose relationships or connections that are trivial, a conscientious arbitrator should err in favor of disclosure. 960 S.W.2d at 637. This is because it is for the parties to determine, after full disclosure, whether a particular relationship is likely to undermine an arbitrator's impartiality. 960 S.W.2d at 638. The Supreme Court also emphasized that the duty to disclose is a continuing duty that applies throughout the arbitration process. 960 S.W.2d at 637.  Based on these holdings, the Supreme Court determined that a neutral arbitrator who did not disclose a lucrative business referral from a party-appointed arbitrator's law firm during the arbitration was evidently partial as a matter

of law. Consequently, it directed the trial court to vacate the arbitration award. *Id.* at 631, 639-40. *See also, Mariner Financial Group, Inc. v. Bossley*, 79 S.W.3d 32, 35 (Tex. 2002).

In this case, material information was not disclosed by the arbitrator, in that she materially misrepresented a lack of prior arbitrations and contacts with Respondent's counsel under oath. Claimant learned of the prior contacts from Respondent's letter. App. p. 81. However, Respondent blocked attempts by Ameser to conduct a full investigation after partial disclosure by Respondent's counsel. App. p. 112. Ameser diligently sought to obtain specific information concerning prior case resolutions by Harmon prior to her proceeding as the Arbitrator in this matter, but was unaware of how to obtain information concerning prior arbitration rulings by specific arbitrators other than through a formal request to the AAA. No response was ever received from the AAA. Harmon never explained her failure to accurately complete her disclosure form, and to date has not supplied the additional information requested through the AAA. Indeed, information on prior holdings only became apparent after retention of an expert witness who researches arbitration outcomes, as will be discussed below. Thus, this case is analogous to *Commonwealth* and *TUCO*, so that partiality can be inferred by Harmon's failure to make full disclosure of a material fact.

2.      Harmon's partiality on migraines is evident from her ruling.

Harmon's partiality is also evident from her finding that Ameser was not suffering from a migraine, despite her admission that Ameser testified to the contrary. Award at 8, App. p. 9. Harmon disclosed earlier in the proceeding that she had a history of migraines during her teenage and young adult years. App. p. 84. She claimed she believed these experiences would not influence her partiality in her disclosure. App. p. 84. However, her ruling suggests otherwise.

Harmon admits in her Award that Ameser testified he was experiencing the onset of a migraine at the hearing. App. p. 8-9. Timothy Ho, the supervisor Ameser informed of his migraine

-14-

before leave, testified by deposition.  Ho never asserted Ameser was faking the assertion of a migraine. Ho simply felt affronted by the manner in which Ameser informed him of the migraine, and that he left without permission.  Ho deposition at 34-35, App. p. 51. Ho had never received any training on an employee's rights under the FMLA.  *Id.*  Ho did not appear at the hearing, so that his deposition testimony was the only other eye witness testimony concerning Ameser's condition. Peter Gruber, the manager who recommended termination, likewise testified at deposition that he had no reason to doubt Ameser's veracity in claiming the onset of a migraine:

```
1      Q.  Sitting here today, do you have any reason to
2  doubt Mr. Ameser's assertion that he was in fact
3  suffering from the onset of a migraine on the Sunday
4  evening of July 22nd, 2007?
5      A.  No, sir.
```

Gruber deposition at 31, App. p. 22. Harmon admits in her award that Ameser's doctor diagnosed him with continuing intermittent migraines.  App. pp. 11-12.

Since there is no evidence Nordstrom actually fired Ameser due to a belief he was faking a migraine, Harmon's decision indicates either that she was biased in favor Nordstrom to the point she would invent reasons to justify his discharge, or else that she was biased by her own experience with migraines, and improperly substituted external evidence of her migraine onsets for the testimony at the hearing.  In either event, her ruling shows partiality, so that the Award should be vacated.

3.      Statistical evidence shows systematic bias by AAA arbitrators.

The Court should further vacate the arbitration because statistical evidence shows the AAA arbitration selection procedure and the apparent incentive arbitrators have to rule in favor of large companies in the hopes of obtaining repeat business consistently results in the selection of employer-biased arbitrators.  The AAA has facilitated this outcome in this case by refusing to provide details concerning Harmon's previous rulings to Ameser's counsel during the arbitrator selection process,

and thereafter when it was revealed that Harmon had participated in arbitrations with opposing counsel in the past.

Using national information obtained through the AAA by virtue of disclosures mandated by California law, Cornell University Professor and lawyer Alex Colvin has reviewed thousands of AAA employment arbitrations.  His complete opinions are contained in his affidavit, which is included at Appendix. p. 182.  Briefly, however, Dr. Colvin has confirmed through statistics that AAA employment arbitrations and arbitrators are systematically biased against employees.  Summarizing his research findings, which have been peer reviewed, Dr. Colvin has found:

- The employee win rate in arbitrations was only 21.4%, compared to win rates of 36.4% in federal court, or 43.8% in state court for discrimination cases.

- In cases where a recovery was obtained, the mean award in arbitration was only $109,858, versus $394,223 for federal litigation, or $595,594 for state cases.

- Combining win rates and damage awards, the expected outcome in arbitration was only $23,548, versus an expected outcome of $143,497 for federal court, and $260,871 for state court.

- Thus, an employee required to use AAA employment arbitration can expect to recover only 9% of the amount he could get for his claims in state court, or 16.4% of his expected recovery in federal court.

- These results are statistically significant, so that Dr. Colvin can say with 99% certainty that AAA arbitrations are biased against employees in both their outcomes, and that damage awards are smaller.

- Independent studies have shown employment arbitrators to be significantly less likely to side with employees than other decision makers, including former jurors.

- Arbitrator bias is particularly likely where there is a "repeat player" as the employer.  In such situations, the employee win rate drops to 16.9%, versus 31.6% against one-shot employers.

- Where the employer had used an arbitrator before, the employee win rate fell to 12.0%, showing statistical significance at a 95% confidence level.

- In such cases, the damage expectation also fell, so that the expected recovery for an

-16-

employee fell to $7,451, or about 5% of the expected recovery in federal court, or 2.9% of the expected recovery in state court.

• Dr. Colvin's conclusion is that the evidence supports the argument that there is a danger of arbitrator bias out of hopes of being selected as the arbitrator for multiple cases.

• The AAA's Due Process Protocol, which recommends mandatory disclosure of the prior six arbitration proceedings by an arbitrator, is therefore a material disclosure to help control this kind of bias, and the AAA's failure to follow this protocol was therefore a material omission.

Harmon's track record is consistent with Dr. Colvin's general findings. The database Dr. Colvin has amassed as part of his research includes three references to arbitrator Melva Harmon in addition to the instant matter. She has found for the employer in every dispute where she acted as the arbitrator. Including this case, she is 4 for 4 in favor of the employer. Ameser would not have agreed to allow her to act as an arbitrator had this record been known to him, and he had no knowledge of any means to investigate her track record absent the letter of request by his attorney to the AAA for further information. App. p. 179-81. Thus, the Court should vacate the AAA arbitration award due to the systemic bias its arbitrators have shown against employees, especially employees at large companies who are "repeat players" in the arbitration process.

4. Harmon's refusal to take an oath creates the appearance of bias.

Finally, Harmon's refusal to take an oath she would act impartially during the proceeding creates the appearance of bias. App. p. 180. Oaths are routinely required of witnesses who testify in arbitration, as well as judges and jurors when they assume responsibility in civil matters. Harmon's refusal to take such an obligation creates at least the appearance of bias, and may even be evidence of premeditation on her part. Harmon's assertion at the hearing that she had already taken an oath in the matter, while true, is tainted by the fact her earlier disclosures have been shown to be false on at least two of the questions in her conflict disclosure. The Court should vacate her

-17-

award.

**B.      The Award Was obtained by Undue Means.**

Pursuant to 9 U.S.C. §10(a)(1), the Court should set aside the Award because it was procured by fraud, corruption, or undue means.  Nordstrom made repeated promises in its Dispute Resolution Program to its employees that AAA arbitration would be fair in order to induce agreement to participate in the program.  For example, Nordstrom represented to its employees that the AAA "is considered a leading resource in administering fair, cost-effective resolution of work-related disputes."  App. p. 108.  It further represented that pursuant to the policy that arbitrators would "have no relationship to Nordstom or its representatives" and that "the arbitrator must disclose any information that ... may create an appearance of bias."  App. p. 108. The program affirmatively represents:

> The Nordstrom Dispute Resolution Program was created to help resolve our differences together in a fair and timely manner.  It also provides a process that protects your legal rights and allows for the same remedies and relief that would have been available to you had the matter been heard in court."

App. p. 66.

Dr. Colvin's statistical proof shows these statements to be false.  The lack of transparency and due process protections in AAA employment arbitrations through mandatory policies are substantially biased in favor of employers over employees.  Not only are employers more likely to win, but the numbers show that the differential in expected recovery is damning, with an expected recovery of 16% of federal claims, and only 9% of state claims. App. p. 185.  Nordstrom has essentially stolen Ameser's civil rights, and left him a tip.  Where the already dismal numbers are conjoined with a repeat player like Nordstrom and a repeat arbitrator, Ameser's expected recovery drops to 5% or less versus his expected litigation recovery. App. pp. 186-187. The magnitude of this

-18-

disparity in conjunction with representations of fairness means Nordstrom has procured Ameser's agreement to arbitrate by materially false representations, so that the Award should be vacated on the grounds the agreement to arbitrate and the resulting award have been tainted by at least the appearance of corruption, and undue means.

<blockquote>C.    The Award Should be Vacated for Exceeding Arbitration Powers.</blockquote>

The Arbitrator's Award should be vacated because Harmon exceeded her powers under the Dispute Resolution Program. Arbitration is contractual and arbitrators derive their authority from the scope of the contractual agreement. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960). One of the statutory grounds for vacating an arbitration award is when an arbitrator exceeds their powers, or so imperfectly executes them that a neutral, final and definite award upon the subject matter submitted was not made.  9 U.S.C.A. §10(a)(4); *see e.g. Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. La. 1979)(award vacated where arbitrator expanded scope of damages and received late evidence); *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989), *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 114, 111 S. Ct. 148 (1990)("arbitral action contrary to express contractual provisions will not be respected"); *see also Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 (5th Cir. Miss. 2004).

As previously noted, the Dispute Resolution Program expressly requires that "all decisions by the Arbitrator are required to be made according to the same principles of law that would control the decision in a court of law," and further that decisions must be "based on the evidence presented." App. at pp. 67, 69.  Furthermore, the Dispute Resolution Program provides that "his or her decision must comply with applicable local, state and/or federal law.  The arbitrator is not authorized to modify the powers granted to him or her under this program, or to make award merely on the basis

of he or she determines to be fair or just." *Id.* Thus, the parties never gave Harmon the ability to simply decide for either party without evidence, or to make an arbitrary or capricious decision wholly unsupported by the evidence.  Where the Arbitration Agreement contains such limitations, the Fifth Circuit will set aside an arbitration award.  *See Brabham*, 376 F.3d at 385; *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1324 (5th Cir. 1994)("arbitral action contrary to express contractual provisions will not be respected" on judicial review); *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989), *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 114, 111 S. Ct. 148 (1990)(award vacated where arbitrator reinstated employee despite actual or implied finding of proper cause, where contract allowed employer to discharge for proper cause); *Williams v. Cigna Fin. Advisors*, 197 F.3d 752, 758 (5th Cir. Tex. 1999).

Harmon's conclusion that Ameser lied about suffering from a migraine on July 22nd, 2007 exceeds her powers under the Dispute Resolution Program because it is completely unsupported by any evidence, as Harmon essentially admits in her Award.  She acknowledges that Ameser testified he was suffering from a migraine.  App. pp. 8-9.  The evidence conclusively demonstrates Ameser had previously suffered from a history of migraines, and had obtained medical certification to support his request for intermittent FMLA leave.  App. pp. 113-115.  Harmon concedes in her award that Ameser's doctor testified he continued to suffer from migraines.  App. p. 12.  Harmon's speculation that Nordstrom would be justified for firing Ameser for allegedly falsifying the reported migraine contradicts management testimony by Gruber he had no reason to doubt Ameser's report of a migraine.  Gruber Depo at 31, App. p 22.   Furthermore, Assistant Manager Timothy Ho testified that the fact that Ameser left without perceived permission was a motivating factor in the termination decision. Ho depo at 34-35, App. p. 51.

Thus, Harmon's holding or finding that Ameser faked the report of the migraine because he was upset with his supervisor is purely speculative, and not based on any evidence.  Furthermore, such a finding is irrational.  Harmon earlier concludes that she disbelieved Ameser's testimony that Ho had called him an idiot.  App. p. 5.  Having factually determined that Ho never called Ameser an idiot, it is irrational and inconsistent to speculate that he falsified a report of a migraine in retaliation for a provocation which never occurred.  App. pp. 8-9.  Thus, the award must be set aside and the matter remanded, because Harmon has exceeded her contractual power as an arbitrator by ignoring the evidence, and simply deciding who she wanted to win.

**D.      The Award Should be Vacated for Arbitrator Misbehavior.**

Harmon's disregard of the applicable federal law constitutes "misbehavior" under 9 U.S.C. §10(a)(3).  While federal courts have generally allowed arbitration of federal employment rights, they have done so with a caveat.   In the context of reviewing arbitrator enforcement of federal statutory employment laws, the Fifth Circuit has explained that reviewing courts must exercise special vigilance in reviewing awards:

> The Supreme Court's assumptions and predictions in *Gilmer[v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991)] assign heavy responsibilities to arbitrators and the federal courts. Arbitrators have a duty to ensure that, in the prospective subjection of federal statutory employment rights claims to compulsory arbitration, employees will not forgo substantive statutory rights or effective vindication of their statutory causes of action, and the statutes will continue to serve both their remedial and deterrent functions. The federal district courts and courts of appeals are charged with the obligation to exercise sufficient judicial scrutiny to ensure that arbitrators comply with their duties and the requirements of the statutes. In other words, the *Gilmer* Court anticipated that an employee's prospective waiver of the right to a court's decision about the merits of his or her future ADEA or Title VII disputes would not have the effect that it does in ordinary commercial arbitration-"relinquishment [of] much of that right's practical value." *First Options,* 514 U.S. at 942.

-21-

*Williams v. Cigna Fin. Advisors,* 197 F.3d 752, 760-761 (5th Cir. Tex. 1999). Thus, this Court's review of Harmon's decision must take into consideration the broad statistical findings of Dr. Colvin, and apply a more rigorous standard to Harmon's resolution of Ameser's claims in this case.

Harmon's decision, especially with regard to Ameser's FMLA claim, evidences a disregard for the law sufficient to support a finding of misbehavior. Under the FMLA, employers have both prescriptive obligations -- they must grant employees substantive rights guaranteed by the FMLA -- and they have a proscriptive obligation -- they may not penalize employees for exercising these rights. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999), *overruled in part on other grounds, McArdle v. Dell Prods., L.P.*, 293 Fed. Appx. 331, 339 (5th Cir. Tex. 2008). Prescriptively, an eligible employee is granted the right, under certain circumstances, to take up to 12 work-weeks of leave in a 12-month period. 29 U.S.C. § 2612(a)(1). Upon return from FMLA leave, the employee is entitled to immediate restoration to the same position, or its equivalent, occupied prior to leave. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). An employer must honor entitlements, and cannot defend by arguing that it treated all employees identically. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir. 1997); *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). If an employer should deny the employee these rights, the employer has violated the FMLA's entitlement provision, and recovery is permitted. *See Porch v. Dillard's Inc.*, 2004 U.S. Dist. LEXIS 22723, 2004 WL 1809813, at *6 (N.D. Tex. Aug. 12, 2004). An employer's intent is irrelevant with regard to denial of prescriptive rights. *Nero,* 167 F. 3d at 927; *see also, Mellen v. Trs. of Boston Univ.*, 2007 U.S. App. LEXIS 22518, 12-13 (1st Cir. 2007). Here, Nordstrom refused to reinstate Ameser following intermittent leave without excuse.

DOL regulations enumerate only a limited number of reasons why an employer may refuse to reinstate an employee after FMLA leave. Such regulations normally have the force of law. *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984); *Lubke v. City of Arlington*, 455 F.3d 489, 497-98 (5th Cir. 2006); *Sabbrese v. Lowe's Home Ctrs., Inc.*, 320 F. Supp. 2d 311, 327 n. 14 (D. Pa. 2004). DOL regulations specifically list limitations on the duty to reinstate in 29 C.F.R §825.216, and neither insubordination nor alleged unprofessionalism are on the list. 29 C.F.R §825.312 contains a more comprehensive list, which also fails to mention either alleged insubordination for leaving after notice, or unprofessionalism in the manner of giving notice. These regulations were specifically brought to the attention of the arbitrator in Claimant's Reply Brief in Support of Motion for Partial Summary Judgment at p. 5, included in the Appendix. App. p. 123. Unfortunately, notification of these rules, coupled with the evident bias described above, apparently brought to the attention of the arbitrator the need to fabricate a finding of fraudulent use of FMLA leave, which is on the list, in order to justify her arbitrary and apparently predetermined outcome. 29 C.F.R §825.312(g).

Notably, Nordstrom never took advantage of its statutory and regulatory rights to challenge Ameser's original medical certification for intermittent leave, or challenge the certification as it related to this particular episode by obtaining a "second opinion." *See* 29 U.S.C. § 2613 (c), (d); 29 C.F.R. §§825.305(c), 307. This statutory and regulatory right to have a doctor render a "second opinion" or, in the event of a dispute, a "third opinion" prevents employers from "playing doctor." Harmon performed an "end run" around this scheme by conjuring up a finding of fraud.

Harmon's *sua sponte* finding of fraudulent FMLA leave further deprived Ameser of his due process notice rights under the law, since fraud was never alleged. Had he known his migraine would be seriously challenged, he could have provided corroborating testimony he did, in fact, go

immediately home and take medication for his migraine. App. pp. 180-81.

Because FMLA claims involving violation of prescriptive rights under the statute do not require a showing of intent (i.e. the duty to reinstate after leave), and because Ameser has further established that the exercise of his FMLA rights was (for proscriptive purposes) a motivating factor in his termination as a matter of law, the Court should vacate the arbitration award for misbehavior.

### E.      The Award Violates Public Policy.

"A court may refuse to enforce an arbitration award that is contrary to public policy." *Prestige Ford v. Ford Dealer Computer Servs*., 324 F.3d 391, 396 (5th Cir.), *cert. denied*, 540 U.S. 878, 157 L. Ed. 2d 141, 124 S. Ct. 281 (2003). Public policy used to vacate an award "must be explicit, well defined, and dominant." *Id*. (*citing W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983)). The policy advanced must reference "laws and legal precedents" rather than "general considerations of proposed public interests." *Id. Sarofim v. Trust Co.*, 440 F.3d 213, 219 (5th Cir. Tex. 2006). Notably, state law applied generally determines the validity of an agreement to arbitrate.   *In re: Poly-America, L.P.,* 262 S.W.3d 337 (Tex. 2008). Whether a contract violates public policy is a question of law.  *Id.*

The public policy of enforcing employment discrimination laws is well known, and is frequently protected by statutes or regulations which expressly prevent their substantive waiver. *See, e.g.* 29 C.F.R. §825.220(d)("Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA."); 29 U.S.C. §626(f)(ADEA non-waiver provision); *see also, In re: Poly-America, L.P.,* 262 S.W.3d 337 (noting courts view anti-retaliation provisions of Worker's Compensation laws to be non-waivable).

As the Fifth Circuit explained in *Williams v. Cigna Fin. Advisors,* 197 F.3d 752, 760-761 (5th Cir. Tex. 1999), the whole argument in allowing arbitration of employment disputes rests upon

the assumption that arbitrations will be a fair alternative to litigation in the courts.  As the Texas

Supreme Court recently concurred in *In re: Poly-America, L.P.,* 262 S.W.3d 337 (Tex. 2008):

> An arbitration agreement covering statutory claims is valid so long
> as "the arbitration agreement does not waive substantive rights and
> remedies of the statute and the arbitration procedures are fair so that
> the employee may effectively vindicate his statutory rights."

*Id., quoting In re Halliburton Co.,* 80 S.W.3d 566 (Tex. 2002)(invalidating provision that purported

to waive punitive damages and reinstatement rights).

Professor Colvin's statistical research shows that AAA employment arbitrations under

mandatory policies are inherently unfair to employees.  By hoodwinking Ameser into accepting

arbitration as currently administered by the AAA, the statistics show with a 99% level of confidence

he is prejudiced in arbitration both in terms of his likelihood to win, and his expected total recovery.

Indeed, his expected total recovery in arbitration against any employer is only 16.4% of what he

could expect in federal court, and 9% of what he could expect in state court.  App. 185.  Where he

is pitted against an obvious repeat player so that the arbitrator is tempted by the potential fruit of

repeat business, his expected recovery drops to 5% or less of what he could expect to recover in

litigation.  App. 186-187.  Since Ameser has shown that the agreement to arbitrate in this case has

substantively impaired his right to enforce his employment rights, the Court should vacate the

Award and either allow Ameser to bring his claim in litigation, or else remand the matter back to

arbitration with such procedural safeguards as will allow the selection of a fair and neutral arbitrator

with a proven track record of fair results.

WHEREFORE, PREMISES CONSIDERED, Ameser prays the Court vacate the Award, and

either remand the matter for arbitration with such procedural safeguards to allow the selection of an

impartial arbitrator with a proven track record of fair decisions, or void the arbitration agreement

as against public policy, and allow Ameser to proceed *de novo* in court.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: /s/ John H. Crouch, IV
    John H. Crouch, IV
    State Bar No. 00783906

3109 Carlisle Street, Suite 200
Dallas, TX 75204
(214) 969-9099 - Telephone
(214) 953-0133 - Fax

**ATTORNEYS FOR PLAINTIFF**
**JOHN AMESER**

<u>**Certificate of Service**</u>

I hereby certify that on March 5, 2010,  I electronically filed the foregoing  document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system should automatically send a "Notice of Electronic Filing" to the following listed attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.  Such attorney(s) may also be served via any additional means listed below.

Jay Wallace
8080 N. Central Expressway
Suite 1300, L.B. 50
Dallas, Texas   75206-1838

**<u>Via electronic service</u>**

   /s/ John H. Crouch IV
John H. Crouch