# IN THE UNITED STATES COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN AMESER,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:09cv0395G** |
| | ) | |
| **NORDSTROM, INC.,** | ) | |
| **Defendant.** | ) | |

---

## DEFENDANT NORDSTROM, INC.'S RESPONSE TO PLAINTIFF'S SECOND AMENDED MOTION TO VACATE ARBITRATION AWARD

Jay M. Wallace
Michael L. Baum
GIBSON, McCLURE,
      WALLACE & DANIELS, L.L.P.
8080 N. Central Expressway
Suite 1300, L.B. 50
Dallas, Texas 75206-1838
Tel: 214/891-8040
Fax: 214/891-8019
***Counsel for Defendant***

## TABLE OF CONTENTS

**Page**

I.     SUMMARY OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.     Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.     Standard for Vacating Arbitration Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.     No Evidence Of – "Evident Partiality" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              1.     Arbitrator's Refusal to Take Ameser's Oath
                     Does Not Evidence Partiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              2.     There Was No "Material Non-Disclosure" . . . . . . . . . . . . . . . . . . . . . . . 7

              3.     Arbitrator's Fully Disclosed History of Migraines
                     Does Not Show Partiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              4.     Professor Colvin's Non-Authoritative Study . . . . . . . . . . . . . . . . . . . . . 11

       C.     No Evidence of – "Undue Means." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       D.     Deciding Employment Disputes is Within Arbitrator's
              Powers Under the Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       E.     Narrow "Public Policy" Exception Inapplicable Here . . . . . . . . . . . . . . . . . . . 14

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                              <u>Page</u>

*ANR Coal Co., Inc. v. Cogenrix of N.C. Inc.*,
    173 F.3d 493 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Apache Bohai Corp. v. Texaco*,
    480 F.3d 397 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Brabham v. A.G. Edwards & Sons, Inc.*,
    376 F.3d 377 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10-12

*Burlington Northern Railroad Co. v. TUCO, Inc.*,
    960 S.W.2d 629 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Citigroup Global Markets v. Bacon*,
    562 F.3d 349 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*Commonwealth Coatings Corp. v. Continental Cas. Co.*,
    393 U.S. 145 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dawahare v. Spencer*,
    210 F.3d 666 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Delta Queen Steamboat Co. v. District 2 Marine*,
    889 F.2d 599 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.*,
    991 F.2d 244 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kergosien v. Ocean Energy Inc.*,
    390 F.3d 346 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6, 12, 13

*Mariner Financial Group, Inc. v. Bossley*,
    79 S.W.3d 32 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ormsbee Dev. Co. v. Grace*,
    668 F.2d 1140 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*,
    991 F.2d 141 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Positive Software Solutions, Inc. v. New Century Mtg. Corp.*,
    476 F.3d 278 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Rogers v. KBR Technical Services Inc.*,
    2008 WL 2337184 at *1 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Totem Marine Tug & Barge, Inc. v. North American*,
    607 F.2d 649 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**Statutes**                                                              **Page**

9 U.S.C. § 10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

9 U.S.C. § 10(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

9 U.S.C. § 10(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

9 U.S.C.§10(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 2611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN AMESER,                    )
     Plaintiff          )
                        )
v.                              )     Civil Action No. 3:09cv0395G
                        )
NORDSTROM, INC.,                )
     Defendant.         )

### DEFENDANT NORDSTROM, INC.'S RESPONSE TO PLAINTIFF'S
### SECOND AMENDED MOTION TO VACATE ARBITRATION AWARD

COMES NOW, Defendant Nordstrom, Inc. ("Nordstrom") and files its Response to Plaintiff's Second Amended Motion to Vacate Arbitration Award[1] and would respectfully show the Court as follows:

### I.
### SUMMARY OF THE FACTS

A.    **Procedural Background.**

In an Arbitration conducted pursuant to the rules set forth in Nordstrom's Benefit Plan (*See* **Ameser Appendix App. 0064 - App. 0071**) and the rules of the American Arbitration Association ("AAA"), Ameser sought damages for termination of his employment, alleging violations of the Family Medical Leave Act, 29 U.S.C. § 2611, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, the Americans with Disabilities Act, 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. This case was heavily litigated for nine (9) months, including cross motions for summary judgment where Appellant raised the exact same issues that he raises essentially for the fourth time here. A full hearing on the merits was held September 17-18,

---

[1] This Court has already denied Plaintiff's Amended Motion to Vacate Arbitration Award on the basis that this matter is on appeal. However, by opinion dated March 2, 2010, the Fifth Circuit remanded this matter. See **Ameser Appendix App. 0230**. Therefore, out of an abundance of caution, Nordstrom files its Response.

2008, in which both sides presented evidence and live testimony from multiple witnesses. In short, this matter was *extensively* litigated on the merits.

After consideration of the evidence presented at the hearing and the allegations of the parties, the AAA Arbitrator, Melva Harmon ("Ms. Harmon") found that Ameser was terminated for legitimate, nondiscriminatory reasons and found for Nordstrom on all of Ameser's claims. **N-App 0001 - N-App 0013**.

On February 2, 2009, Ameser filed a Motion to Vacate Arbitration Award in the 134th Judicial District in Dallas County, Texas. Because Ameser's Motion to Vacate alleged "manifest disregard" of federal law as a ground for vacatur, Nordstrom removed this case to the Northern District of Texas asserting federal question jurisdiction. On March 16, 2009, Ameser filed an unmeritorious Request for Entry of Default, which this Court properly denied "subject to repleading." Asserting that he believed this Court's Order to replead to be a final appealable Order, Ameser then filed an equally unmeritorious appeal to the Fifth Circuit. Realizing, as Nordstrom argued, that they lacked appellate jurisdiction, the Fifth Circuit issued an Opinion remanding the case on March 2, 2010. *See* **Ameser Appendix App. 0230 - App. 0237**. On March 25, 2010, Ameser filed his Second Amended Motion to Vacate Arbitration Award in this Court ("Ameser's Motion"), to which Nordstrom now responds.

**B.     Statement of Facts.**

Ameser's position is simply stated: I lost, therefore the Arbitration proceeding must have been unfair. Nordstrom need not re-litigate the entire case here. However, in order to put in the proper perspective some of the one-sided statements made by Ameser in his Motion, Nordstrom attaches hereto as **N-App 0014 - N-App 0027** just some of the relevant documents presented at Arbitration which illustrate, *inter alia*, Ameser had on numerous occasions missed work with either

no explanation or inappropriate explanation and had a significant history of unprofessional conduct and of shouting profanities at managers.  Moreover, Nordstrom introduced evidence that Ameser, in an effort to trump up his claims, falsified Nordstrom FMLA forms, which employees submitted to record work hours missed for FMLA leave.  **N-App 0028 - N-App 0029**.  Likewise, as indicated in the Arbitrator's Findings of Fact, Nordstrom presented evidence that Ameser, when asked by his manager to perform one of his job duties, responded "[this is a] F_____ waste of my time."  **N-App 0002**.

Similarly, Nordstrom conclusively proved that Ameser was never disciplined for any FMLA absence.  This evidence was of course conveniently omitted from Ameser's Appendix filed with this Court.  Ms. Harmon appropriately noted Ameser's testimony was "not credible as he claimed other warnings he received for absences or being tardy were because of migraine headaches when the records show his testimony was false."  **N-App 0008**.  Given the above, one need not think too hard as to why the Arbitrator might reach such a conclusion.

Based on all of the evidence presented, the Arbitrator found for Nordstrom on all of Ameser's claims, including the following Conclusions of Law:

(1) **FMLA Claim;** Nordstrom articulated a legitimate, nondiscriminatory reason for Ameser's termination, i.e. that Ameser was terminated for his improper conduct on two separate occasions in conjunction with his failure to correct his unprofessional behavior and work his scheduled shifts despite prior warnings. **N-App 0008**.

(2) **ADEA Claim;** Ameser failed to meet his burden to establish he was discharged because of his age. Specifically, no evidence was presented to discredit Nordstrom's stated non-discriminatory reason by showing it was unworthy of belief. **N-App 0009**.

(3) **ADA Claim;** Ameser did not have a disability within the meaning of the ADA because Ameser's ADD and his migraine headaches are controlled by medication. **N-App 0011**.

(4) **Retaliation Claim;** Ameser cited no authority that a valid Title VII claim existed where the incident which allegedly gave rise to the retaliation occurred over a year ago, the manager involved in the incident was no longer Ameser's department manager, and the manager played absolutely no role in the termination decision. **N-App 0012**.

In each instance, the Arbitrator followed the authoritative and controlling case law in the Fifth Circuit and the United States Supreme Court in rendering her decision.

## II.
## <u>SUMMARY OF THE ARGUMENT</u>

There are no valid grounds for vacating the Arbitrator's well reasoned, well-supported award, and the basis for Ameser's Motion to do so is completely unsupportable. A court's review of an arbitration award is extraordinarily narrow and vacatur is only appropriate under the statutory grounds specifically set forth in 9 U.S.C. § 10(a). *Kergosien v. Ocean Energy Inc.*, 390 F.3d 346, 352 (5th Cir. 2004).

Ameser first cites the "statutory" grounds of "evident partiality", however none of his four sub-arguments in that regard even approach the requirements for showing evident partiality of the arbitrator. Neither Ms. Harmon's refusal to re-swear in at Ameser's behest, counsel for Nordstrom's *one, fully disclosed, prior representation* before the Arbitrator, Ms. Harmon's past history of migraines (which was also fully disclosed), nor a study by a law-school professor evince "evident partiality" as the relevant case law narrowly defines that term.

Ameser next asserts the Arbitration Proceeding, **which he initiated and agreed to**, was procured by "undue means." However, Ameser supports this argument by essentially asking this Court to abrogate arbitration of employment disputes, again putting forth a single study by a law-school professor, which theorizes AAA arbitration proceedings are systematically biased against plaintiffs.

Likewise, Ameser's assertion that the Arbitrator "exceeded her powers" is merely an attempt to have the arbitrator's award reviewed in detail, contrary to established Fifth Circuit and Supreme Court case law regarding the standard of review for arbitration awards. The exclusive statutory bases for vacatur under 9 U.S.C. § 10(a) do not allow for review of an arbitrator's reasoning. This could not have been more clear than in *Citigroup Global Markets v. Bacon*, when this Circuit reiterated the exclusivity of the four (4) statutory grounds under 9 U.S.C. § 10(a) and denounced "manifest disregard" in the strongest possible terms as a valid ground for vacatur, calling that term "no longer useful" in actions to vacate arbitration awards. *Citigroup Global Markets v. Bacon*, 562 F.3d 349 (5th Cir. 2009).

In a "last-ditch" effort to state a valid ground for vacatur, Ameser cites a broad-stroke "public policy" of enforcing employment discrimination laws, but offers no argument for why this particular award violated public policy. As such, Ameser stated no valid grounds for the relief requested and denial of his Motion is therefore proper.

### III.
### ARGUMENT AND AUTHORITIES

A.    **Standard for Vacating Arbitration Award.**

As noted above, in *Citigroup*, the Fifth Circuit held that the statutory bases set for in 9 U.S.C. § 10(a) are the exclusive bases by which a reviewing court may vacate an arbitration award. *Citigroup*, 562 F.3d 349. Under these exclusive statutory bases, judicial review of an arbitration award is extraordinarily narrow. *Kergosien*, 390 F.3d at 352; *see also Rogers v. KBR Technical Services Inc.*, 2008 WL 2337184 at *1 (5th Cir. 2008). If an award is rationally inferable from the facts before the arbitrator, the award must be affirmed. *Id.* at 353. Whatever indignation a reviewing

court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so. *Id.*

The statutory bases for vacating an arbitration award are set forth in the Federal Arbitration Act ("FAA") at 9 U.S.C. §10(a), which provides that an award may be vacated:

(1)     where the award was procured by corruption, fraud, or undue means;

(2)     where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct… or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a). These grounds provide only a limited avenue for vacating an award and do not allow a reviewing court to analyze an arbitrator's reasoning, or lack thereof. In fact, arbitrators need not give reasons for their awards. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 (5th Cir. 2004).  Even when arbitrators do provide a rationale for their awards, courts may not review that reasoning. *Id.* If an arbitrator is even arguably construing or applying the parties' contract and acting within the scope of his or her authority, even the fact that a court is convinced the arbitrator committed serious error does not suffice to overturn his decision. *Kergosien*, 390 F.3d at 358.

**B.     No Evidence Of – "Evident Partiality".**

Ameser has failed to produce any evidence or support for his contention that there was "evident partiality" on the part of the Arbitrator.  Ameser advances four sub-arguments for vacatur under the heading of "Evident Partiality."  Ameser asserts that: (1) Ms. Harmon's refusal to swear herself in at the start of the Arbitration proceeding creates an appearance of bias; (2) Ms. Harmon's partiality is evident from her alleged material non-disclosure concerning a prior arbitration with

Nordstrom's counsel; (3) Ms. Harmon possesses a "partiality on migraines" which is evident from her ruling; and (4) a statistical study conducted by a law-school professor shows systematic bias by AAA arbitrators.

### 1.    Arbitrator's Refusal to Take Ameser's Oath Does Not Evidence Partiality

Ameser's argument concerning the Arbitrator not swearing herself to an oath proposed by Ameser at the start of the Arbitration Proceedings is so exceedingly unmeritorious as to border on the absurd; as such, Nordstrom will briefly address this argument first.  Ameser asserts the Ms. Harmon's "refusal to take an oath . . . creates the appearance of bias." *See Ameser's Second Amended Motion, p. 17*.   However, as Ameser admits in his Motion, and as evidenced by the attached oath (**N-App 0030 - N-App 0032**), Ms. Harmon had *already taken an oath* through the AAA, and was understandably confused by Ameser's request that she then swear to an oath, the content of which was created by Ameser and his counsel.  Ameser's contention that Ms. Harmon's refusal to submit to *his* oath somehow illustrates bias evinces the complete absence of merit of his Motion to Vacate.

### 2.    There Was No "Material Non-Disclosure"

Ameser's assertion that the award should be vacated for a "non-disclosure" badly misses the mark for two reasons: (1) there simply was no "non-disclosure" - - Ameser was fully aware that counsel for Nordstrom had previously arbitrated with Ms. Harmon, and; (2) Ameser misconstrues the applicable case law.  First and most importantly, Ameser mischaracterizes the record in one critical respect – he *agreed* to Ms. Harmon as the arbitrator**.**  In this regard, Ameser's assertion that the AAA "chose Harmon to act as the arbitrator" is patently false. *See Ameser's Second Amended Motion, p. 6*.  Ms. Harmon was submitted as a panelist along with a number of other arbitrators. As he admits in his Brief, Ameser was fully aware counsel for Nordstrom had previously

arbitrated with Ms. Harmon.  *See Ameser's Second Amended Motion, pp. 6-7.*  Thus, it stands to reason there was at least a fifty percent chance she had ruled for the employer in that case.  Ameser's assertion that he "stood on his reservation of rights" and thus somehow preserved indefinitely his right to object to Ms. Harmon as the arbitrator is completely without merit.  *Id*. Indeed, Ameser admits he "did not formally object" when Ms. Harmon was initially selected, nor did he *ever* do so. *Id.* Only now, having lost, does he complain.

Ameser badly mischaracterizes the requirement for a "material non-disclosure" and would urge this Court to adopt a far more lenient standard than the one established by authoritative United States Supreme Court and Fifth Circuit case law.  A plurality opinion in *Commonweath Coatings v. Continental Cas. Co.*, the Supreme Court case upon which Ameser primarily relies, announced a "simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." *Commonwealth Coatings Corp. v. Continental Cas. Co*., 393 U.S. 145, 149 (1968).  However, in a concurring opinion, Justice White, the fifth vote in the case, clarified what was required under this holding, stating it was, "enough for present purposes to hold, as the Court does, that where the arbitrator has a *substantial interest* in a firm which has done *more than trivial business* with a party, that fact must be disclosed". *Id* at 152*.* The Fifth Circuit and a majority of circuit courts have closely tracked the language of Justice White's opinion and set a high bar for what constitutes a "material non-disclosure"; *Positive Software Solutions, Inc. v. New Century Mtg. Corp.*, 476 F.3d 278, 282 (5th Cir. 2007) (*citing, ANR Coal Co., Inc. v. Cogenrix of N.C. Inc.*, 173 F.3d 493, 499-500 (4th Cir. 1999), and holding "an arbitrator's failure to reveal facts may be relevant in determining evident partiality under 9 U.S.C. § 10(a)(2), but that mere nondisclosure does not in itself justify vacatur"); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993) ("It is well established that a mere appearance of bias is insufficient to demonstrate

evident partiality. Arbitrators are not held to the same ethical standards required of Article III judges…"); *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir. 1982) ( holding vacatur requires "clear evidence of impropriety"). Given this body of authoritative case law, the Fifth Circuit has held **an arbitrator's failure to disclose must involve a "significant compromising connection to the parties."** *Positive Software*, 476 F.3d at 282. [Emphasis added].

In support of his "material non-disclosure" argument, Ameser also cites non-binding precedent from two Supreme Court of Texas cases for the proposition that "evident partiality is exhibited when a neutral arbitrator does not disclose facts that might create a reasonable impression of the arbitrator's partiality to an objective observer." *See, e.g. Ameser's Second Amended Motion, p. 13*. This assertion again ignores the critical distinguishing factor in this case; Ameser knew of counsel for Nordstrom's previous representation well in advance of the arbitration hearing. In both *Burlington Northern v. TUCO* and *Mariner Financial Group v. Bossley*, the information evidencing potential partiality was not discovered until after the arbitration was completed. *See Burlington Northern Railroad Co. v. TUCO, Inc.,* 960 S.W.2d 629 (Tex. 1997); *Mariner Financial Group, Inc. v. Bossley*, 79 S.W.3d 32 (Tex. 2002).

As is clear from the record, counsel for Nordstrom had litigated only *once* before with Ms. Harmon serving as the Arbitrator. **Ameser Appendix App. 0081**. This does not represent any kind of connection, much less a compromising one. Conversely, there is no authority to support the proposition that a single previous arbitration rises to the level of "significant compromising connection" required by the Fifth Circuit. Indeed, under Ameser's theory, an attorney could use an arbitrator more than once only if that arbitrator ruled against him or her. Suffice to say such a contention is wholly without merit and is not contemplated by the FAA or in any case in the history of jurisprudence interpreting it.

**3.      Arbitrator's Fully Disclosed History of Migraines Does Not Show Partiality**

Ameser next asserts that because Ms. Harmon previously suffered from migraines and subsequently found for Nordstrom, the award must have been the result of bias. Notwithstanding the nonsensical argument that because both Ms. Harmon and Ameser suffer from migraines, she would be *less* sympathetic to Ameser such that she would rule in Nordstrom's favor, Ms. Harmon fully disclosed to the Parties her history of migraines more than nine (9) months prior to the arbitration hearing.  **N-App 0033 - N-App 0034**.  Again, Ameser had an opportunity to object to Ms. Harmon as Arbitrator at that point, but did not.  The fact that Ameser lost does not in hindsight or otherwise render Ms. Harmon partial as Ameser would have it.

In support of his position Ameser asks this Court to reconsider  selected portions of the written deposition testimony submitted to the Arbitrator.  *See Ameser's Second Amended Motion, pp. 14-15*.  Pursuant to the relevant case law cited above, asking this Court to second guess the Arbitrator's decision is inappropriate as a general principle.  *See, e.g. Brabham*, 376 F.3d at 385. This is particularly true in this case where, as noted above, there was extensive live testimony from multiple witnesses.  Ms. Harmon had the benefit of hearing this live testimony and evaluating the credibility of the witnesses who testified, including, notably, Ameser.  Neither party in this case elected to have a court reporter present at the arbitration hearing.  As such, even in the unlikely event this Court were  inclined to do so, there is no record of the live testimony given at  the Arbitration for this Court to consider.

Ameser's "pick and choose" approach to revisiting credibility judgments made at the time of the arbitration hearing with the benefit of live testimony is contrary to the deferential standard of review set forth above.   Further, Ameser's vague assertion that Ms. Harmon's previous experience with migraines somehow  indicates "evident partiality"is completely without merit in light of the

relevant case law.   As the exclusive statutory grounds for vacatur do not allow a reviewing court to analyze an arbitrator's reasoning, or lack thereof, this Court cannot properly consider the selective deposition excerpts submitted by Ameser as a basis for vacatur. *See, e.g. Id.*

       **4.**     **Professor Colvin's Non-Authoritative Study**

       Ameser next asserts that a statistical study conducted by a law school professor, Alex Colvin, evinces systematic bias in favor of employers in AAA arbitrations.  Most importantly, Mr. Colvin's so-called study is *merely a statistical analysis* of a social and legal issue.  Needless to say Mr. Colvin's study, which was not part of the arbitration, is not authority and holds no precedential value whatsoever. If this Court were to accept Ameser's argument, all future favorable arbitration awards for employers would be subject to vacatur. Ameser would have this Court render federal case law, not to mention the FAA, inapplicable to employment disputes based on a *single academic study*. There is no need to further elaborate on the legal infirmities of such an argument.

**C.**     **No Evidence of – "Undue Means."**

       Ameser further contends the arbitration award was procured by "undue means."  *See Ameser's Second Amended Motion, pp. 18-19*.  Once again, Ameser cites no authoritative case law to support his position.  He instead relies solely on references in Professor Colvin's "study" for his "undue means" argument; in circular fashion, Ameser asserts that Nordstrom's Plan made promises regarding the fairness of the arbitration process and that Professor Colvin's study "proves these statements to be false." *Id.*  Critically, but not surprisingly, in doing so Ameser fails to disclose to this Court that he filed this matter as an Arbitration (i.e. this was not a situation where he filed it in Court and it was compelled to arbitration) thus effectively agreeing to arbitrate.  Ameser, citing Dr. Colvin's study, essentially claims (again, only <u>after</u> losing) that arbitration is an unfair process. Unfortunately for Ameser, neither the FAA nor the Fifth Circuit concur.

At its heart, this argument again asks the Court to call into question every single arbitration dispute on the basis of this non-authoritative statistical study, and similarly fails to get off the ground.

**D.      Deciding Employment Disputes is Within Arbitrator's Powers Under the Contract.**

Ameser next argues the arbitrator exceeded her powers in making this Award. *See Ameser's Second Amended Motion, p. 19.* The Arbitrator decided this employment dispute, which was clearly within the scope of her power granted by Nordstrom's Plan, based on evidence procured through nine months of intense litigation and presented at a two day arbitration hearing. Under the "arbitrator exceeding powers" provision of 9 U.S.C. § 10(a)(4), a reviewing court looks solely to the powers granted in the contract, here Nordstrom's Plan, and the arbitration agreement. *Kergosien,* 390 F.3d at 354. Ameser does not dispute that this claim was subject to arbitration under Nordstrom's Plan; again, he initiated the arbitration. Rather, he asserts that "the parties never gave Harmon the ability to simply decide for either party without evidence, or to make an arbitrary or capricious decision wholly unsupported by the evidence." *See Ameser's Second Amended Motion, pp. 20-21.* This is a particularly ironic, but telling, choice of words by Ameser considering his own Motion cites to this Circuit's decision in *Brabham v. A.G. Edwards & Sons* where the Court invalidated "arbitrary and capricious" as a separate ground for vacatur. *See Ameser's Second Amended Motion, p. 20*; *Brabham*, 376 F.3d 377. Ameser then attempts again to re-argue arbitration evidence in the text of his Brief. *See Ameser's Second Amended Motion, pp. 20-21.*

In her award, Ms. Harmon laid out the detailed "Findings of Fact" upon which she relied in making her award. **N-App 0002 - N-App 0006.** As such, the heart of Ameser's argument is that the award should be vacated because he is dissatisfied with that Award in light of the evidence. This is an improper application of the law regarding 9 U.S.C. §10(a)(4). For example, in *Kergosien*, this

Circuit criticized a district court's vacatur of an arbitration award and overruled a lower court's vacatur, based on a "ruling contrary to the law," stating "the district court seems to have mixed a statutory basis for vacatur (exceeded his powers) with a nonstatutory basis, not recognized by the Fifth Circuit, that is, the arbitrator failed to follow the law." *Kergosien* 390 F.3d at 354.

The *Kergosien* decision reinforces the extraordinarily narrow window through which a court may review an arbitration award. Even where the arbitrator has, in some respect, failed to accurately apply the law, vacatur is improper. *Id.* Nordstrom, of course, adamantly defends Ms. Harmon's application of the law to Ameser's unmeritorious claims, but even in the event this Court believed it to be improper, the "exceeding powers" provision in 9 U.S.C. §10(a)(4) does not provide a loophole by which reviewing Courts can revisit arbitration evidence. Rather, as demonstrated even by the case law cited in Ameser's Motion, it is a very specific statutory grounds for vacatur, which allows a court to vacate an award only where the arbitration agreement "creates a plain limitation on the authority of an arbitrator" and the arbitrator ignores that limitation. *Apache Bohai Corp. v. Texaco*, 480 F.3d 397, 401 (5th Cir. 2007); *See also Totem Marine Tug & Barge, Inc. v. North American*, 607 F.2d 649 (5th Cir. 1979) (vacating a portion of an arbitration award where the panel awarded damages for an issue not before them); *Delta Queen Steamboat Co. v. District 2 Marine*, 889 F.2d 599 (5th Cir. 1989) (vacating reinstatement of an employee where the only issue before the arbitrator, pursuant to the arbitration agreement, was whether "proper cause" existed for discipline and the arbitrator found such cause did exist). As Ameser has presented no support, in fact *no argument*, for the proposition that Ameser's employment disputes were not properly before the arbitrator, this argument must fail.

Ameser heavily relied on "manifest disregard of the law" in his original Motion to Vacate, and now urges this Court to revive that bygone non-statutory ground for vacatur under the statutory

basis of "arbitrator misbehavior" *See Ameser's Second Amended Motion, pp. 21-22.* Unfortunately for Ameser manifest disregard of the law is no longer a valid basis for vacatur in the Fifth Circuit. *Citigroup*, 562 F.3d 349. Manifest disregard was previously an available non-statutory basis for vacatur of an arbitration award, though it was exceedingly narrow and rarely used. *Apache Bohai Corp,* 480 F.3d at 405; *see also Dawahare v. Spencer*, 210 F.3d 666 (6th Cir. 2000) (stating; "since Supreme Court dictum established the manifest disregard of the law standard forty-seven years ago, only two federal courts of appeals have used it to vacate arbitration decisions") However, in the recent Fifth Circuit case, *CitiGroup Global Markets Inc. v. Bacon*, the Court held:

> In the light of the Supreme Court's clear language that, under the FAA, the statutory provisions are the exclusive grounds for vacatur, manifest disregard of the law as an independent, nonstatutory ground for setting aside an award must be abandoned and rejected. Indeed, the term itself, as a term of legal art, is no longer useful in actions to vacate arbitration awards.

*Citigroup*, 562, F.3d at 358.   Ameser's assertion that *Citigroup* "left open the question of whether the prior case law interpreting manifest disregard could be reinterpreted as a statutory assault on an award under 9 U.S.C. §§10(a)(3) and (a)(4)" flatly ignores the clear mandate set forth by the Fifth Circuit in the last sentence quoted above. Ameser's argument in this regard is completely without merit and, likewise, must fail.

## E.      Narrow "Public Policy" Exception Inapplicable Here.

Ameser finally contends the arbitration award must be overturned as in violation of "public policy." *See Ameser's Second Amended Motion, p. 24.*  The Arbitrator's Award resulted from a properly conducted arbitration proceeding in which Ameser lost on every single one of his employment claims. However, Ameser now asserts that the Award should be vacated, citing a "well known" public policy of enforcing employment discrimination laws. *Id.*  Courts can overturn arbitration decisions that are contrary to public policy (though the Fifth Circuit's language in

*Citigroup* certainly draws this into question), but it is "not to be invoked lightly" as a grounds for doing so. *Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.*, 991 F.2d 244, 248 (5th Cir. 1993).

Ameser offers no support for his argument that this award should be vacated other than (1) Professor Colvin's study; (2) the contention that because the Arbitrator did not believe Nordstrom discriminated against him the Award must be somehow against public policy. One need not look too closely at this argument to see that Ameser is asking the Court to either; (1) revisit the evidence to determine that this particular award was against public policy; or (2) hold that all employment arbitration proceedings pursuant to Nordstrom's plan are invalid. This Response has already addressed the impropriety of either of these contentions, and needs not address them again here.

## IV.
## CONCLUSION

There are no grounds, statutory or otherwise, under which the Court can properly vacate the Arbitrator's Award. Ms. Harmon acted properly and within her powers pursuant to the parties' contract when she found that Ameser was terminated for legitimate, nondiscriminatory reasons. Ameser's Motion is, at best, ill-conceived, and, at worst, an unmeritorious Motion intended to do nothing more than harass. As Ameser has not established that proper grounds for vacatur exists, Ameser's Motion should be denied and the award should be upheld.

Respectfully submitted,

**GIBSON, McCLURE,**
       **WALLACE & DANIELS, L.L.P.**


By:       /s/ Jay M. Wallace
          Jay M. Wallace
          State Bar No. 20769200
          Michael L. Baum
          State Bar No. 24006815
8080 N. Central Expressway
Suite 1300, L.B. 50
Dallas, Texas 75206-1838
TEL: 214/891-8040
FAX: 214/891-8019
*Counsel fo Defendant Nordstrom, Inc.*

## CERTIFICATE OF SERVICE

       I hereby certify that on **March 25, 2010**, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, Dallas Division using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Theodore C. Anderson
John H. Crouch, IV
Kilgore & Kilgore, PLLC
3109 Carlisle, Suite 200
Dallas, Texas 75204


                              /s/ Jay M. Wallace
                              Jay M. Wallace