UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN AMESER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| NORDSTROM, INC., | § | 3:09-CV-0395-G |
| | § | |
| Defendant. | § | ECF |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
SECOND AMENDED MOTION TO VACATE
<u>ARBITRATION AWARD</u>**

TO THE HONORABLE COURT:

Now comes John Ameser, Plaintiff in the above-referenced action, and files this his Reply Brief in Support of his Second Amended Motion to Vacate, and in support thereof would show the Court as follows:

I.

<u>Statement of Facts</u>

Nordstrom's colorful rendition of the arbitration proceedings dodges without explaining the clear testimony of its managers and the termination memorandum. The allegation that Ameser falsified a document is undermined by the fact the alleged forgery discloses changes had been made since Gruber's signature, and by the fact that both documents list the disputed Sunday departure as claimed FMLA time. See N. App. 0028-29. Ameser's alleged use of profanity in complaining about an assignment was remote in time from the termination.

II.

**Ameser Has Shown "Evident Partiality"**

Initially, Ameser has shown evident partiality by showing Harmon apparently perjured herself on her mandatory AAA disclosures. Harmon didn't simply neglect to disclose a prior business dealing, she affirmatively falsified mandatory AAA disclosures which require her to disclose prior arbitrations with opposing counsel. Pl. App. p. 112 (Item #9). She affirmatively swore that: "I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules for the American Arbitration Association." Pl. App. p. 112.

Nordstom's assertion that the misrepresentation was immaterial is disingenuous. Such connections are obviously material, since the AAA requires full disclosure of such matters upon a Notice of Appointment. Pl. App. p. 111-12. The AAA's Due Process Protocol further opines full disclosure of the representatives for the six prior arbitrations is necessary to insure fairness. Pl. App. p. 73 ("Access to Information"). Further, Nordstrom knew such disclosures would be material, because it affirmatively promised in its Dispute Resolution Program that:

> The AAA can call upon thousands of arbitrators to serve as employment dispute arbitrators. These individuals come from a variety of industries and educational backgrounds and *have no relationship to Nordstrom or its representatives*. The arbitrator selected cannot have any personal or financial interest in the dispute. Before accepting an appointment, *the arbitrator must disclose to the AAA any information that may prevent a prompt hearing or create an appearance of bias*.

Pl. App. p. 110 (*emphasis added*).

Ameser was justified in seeking an explanation regarding the omission. Such an oversight might be inadvertent if Harmon had engaged in hundreds of arbitrations. However, Dr. Colvin

found she had done only three prior employment arbitrations. Pl. App. p. 190. Given that Nordstrom blocked Ameser's attempts to investigate this error, Nordstrom is estopped to complain. Pl. App. p. 114. Ameser placed Nordstrom on notice he was reserving his right to complain about the selection of Harmon as the arbitrator. Pl. App. p. 82.

Given that courts have found demonstration of witness perjury to get selected sufficient to set aside an award, it would be anomalous if arbitrator perjury were insufficient to vacate an award. *See e.g. Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.), *cert. denied*, 459 U.S. 990, 103 S. Ct. 346, 74 L. Ed. 2d 386 (1982)(There is no doubt that perjury constitutes fraud within the meaning of the Arbitration Act.); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. Fla. 1988)(perjury regarding qualifications of expert required vacation of punitive damages award).

Further, despite its bluster, Nordstrom has failed to distinguish Dr. Colvin's authoritative and peer-reviewed affidavit establishing AAA employment arbitrations and arbitrators are systematically biased against employees such as Ameser, and that this effect is particularly pronounced when a "repeat" defendant is involved in the litigation. Dr. Colvin's affidavit is clear, positive and direct on the subject. Nordstrom waived any objection to the affidavit by failing to make a *Daubert* challenge to Dr. Colvin's report, or providing a controverting affidavit by an expert of its choosing, if such could be procured.

Norstrom appears to argue that setting aside an arbitration for systematic fraud and partiality would mean too much work for the Court. This is akin to saying that because Bernie Madoff cheated thousands of investors out of billions of dollars, none should be allowed to recover because such cases might clog the Courts, and mean more work for trial and appellate courts. The argument is spurious, invites the Court to violate its own oaths of office, and should be rejected as such.

Finally, Nordstrom seems to imply, without evidence, that such a large scale arbitration fraud could not have been accomplished. Ameser requests the Court take judicial notice that similar statistical studies have shown bias by the National Arbitration Forum in the context of credit card consumer disputes, where consumers win just .2% of the time. *See* "Banks vs. Consumers (Guess Who Wins)," Business Week, June 5, 2008. The NAF was sued by the Attorney General for the State of Minnesota for its handling of consumer disputes, and how it promoted its services to credit card companies and their attorneys. In response, the NAF has agreed to a consent decree by which it will no longer handle credit card consumer arbitration disputes. An article summarizing these proceedings and decisions is available online at the Business Week web site at http://www.businessweek.com/investing/wall_street_news_blog/archives/2009/07/big_arbitration.html. The AAA has announced it will no longer handle such claims as well, apparently under threat from being added to that suit.

Given Harmon's apparent perjury, and Dr. Colvin's unrebutted statistical finding that AAA arbitrations are biased against employees, and particularly so in "repeat player" situations, Ameser has established partiality on the part of the arbitrator, so that the award should be vacated.

III.

**<u>Ameser Has Shown "Undue Means"</u>**

Ameser has conclusively established the arbitration award was procured by "undue means" sufficient to vacate the Award. 9 U.S.C. §10(a)(1). Under the FAA, a party who alleges that an arbitration award was procured through fraud or undue means must demonstrate that the improper behavior was (1) not discoverable by due diligence before or during the arbitration hearing, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence. *Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 304 (S.D. Tex.

1997), *affirmed*, 161 F.3d 314 (5th Cir. 1998); *see also, Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992), *cert. denied*, 506 U.S. 1050, 113 S. Ct. 970, 122 L. Ed. 2d 126 (1993); *Dean Foods Co. v. United Steel Workers of Am.*, 911 F. Supp. 1116, 1124 (N.D. Ind. 1995); *Shearson Hayden Stone, Inc. v. Liang*, 493 F. Supp. 104, 108 (N.D. Ill. 1980), aff'd, 653 F.2d 310 (7th Cir. 1981). Although "fraud" and "undue means" are not defined in section 10(a) of the FAA, courts interpret the terms together. *Trans Chem. Ltd., supra; see also, Shearson Hayden Stone*, 493 F. Supp. at 108. Fraud requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence. *Indocomex Fibres Pte., Ltd. v. Cotton Co. Int'l, Inc.*, 916 F. Supp. 721, 728 [**113] (W.D. Tenn. 1996); *Dean Foods v. United Steel Workers*, 911 F. Supp. at 1124. Similarly, undue means connotes behavior that is "immoral if not illegal" or otherwise in bad faith. *Trans Chem. Ltd., supra; A.G. Edwards*, 967 F.2d at 1403-04; *Shearson Hayden Stone*, 493 F. Supp. at 108. Section 10(a)(1) also requires a nexus between the alleged fraud or undue means and the basis for the arbitrator's decision. *Forsythe*, 915 F.2d at 1022; *A.G. Edwards*, 967 F.2d at 1403.

Ameser has established by clear and convincing evidence that the original agreement to arbitrate, without which there would be no Award, was procured by material false statements. Nordstrom made repeated promises in its Dispute Resolution Program to its employees that AAA arbitration would be fair in order to induce agreement to participate in the program. For example, Nordstrom represented to its employees that the AAA "is considered a leading resource in administering fair, cost-effective resolution of work-related disputes." Pl. App. p. 110. It further represented that pursuant to the policy that arbitrators would "have no relationship to Nordstom or its representatives" and that "the arbitrator must disclose any information that ... may create an

appearance of bias." Pl. App. p. 110. The program affirmatively represents:

> The Nordstrom Dispute Resolution Program was created to help resolve our differences together in a fair and timely manner. It also provides a process that protects your legal rights and allows for the same remedies and relief that would have been available to you had the matter been heard in court.

Pl. App. p. 66.

Dr. Colvin's statistical proof shows these statements to be false. The lack of transparency and due process protections in AAA employment arbitrations, combined with the taint of money from the employer and the promise of repeat business, have led to a forum substantially biased in favor of employers. Not only are employers more likely to win, but the numbers show that the differential in expected recovery is damning, with an expected recovery of 16% of the value of federal court claims, and only 9% of state claims. Pl. App. p. 187. Nordstrom has essentially stolen Ameser's civil rights, and left him a tip. Where the already dismal numbers are conjoined with a repeat player like Nordstrom and a repeat arbitrator, Ameser's expected recovery drops to 5% or less versus his expected litigation recovery. Pl. App. p. 188. The magnitude of this disparity in conjunction with representations of fairness means Nordstrom and Harmon have procured Ameser's agreement to arbitrate by materially false representations, so that the Award should be vacated for corruption and undue means.

Each of the three prongs enumerated in *Trans Chem. Ltd., supra*, have been satisfied. The systemic pro-employer bias of Harmon and the AAA was not discoverable by Ameser through due diligence. Nordstrom blocked attempts by Ameser's counsel to investigate Harmon's track record, and has repeatedly insisted the proceedings would be fair. Dr. Colvin's findings are still not widely known, and his most recent study was not presented until January 2009, after the entry of the Award. Pl. App. p. 200. Ameser testifies in his affidavit in support of his Motion that he was not aware of

the bias, of the details of Harmon's prior engagement, nor how to research prior rulings of an arbitrator. Pl. App. p. 183.

Obviously, bias of the particular arbitrator in question, and the systemic bias of AAA proceedings is materially related to the Award.  Ameser would not have voluntarily agreed to arbitrate his employment dispute at all, or to the selection of Harmon as an arbitrator, had the bias been made fully known. Pl. App. p. 182-83.

Ameser has established perjured testimony by the arbitrator, Melva Harmon, as well as systemic bias against employees in AAA arbitrations by clear and convincing evidence.  Harmon's misrepresentation is undisputed.  Dr. Colvin's peer-reviewed statistical findings demonstrate bias to a 99% degree of certainty. Pl. App. p. 186-88.  Accordingly, the Award should be vacated.

IV.

**Public Policy Remains a Valid Basis to Vacate Award**

Plaintiff has located one case from the Fifth Circuit since the Supreme Court decision in *Hall Street Association, L.L.C. v. Mattel, Inc.*, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) to address the issue of public policy, but which unfortunately does not reference that case.  The Fifth Circuit in *Continental Airlines, Inc. v. Air Line Pilots Association, International,* 555 F.3d 399 (5th Cir. 2009) concluded that public policy could be a valid ground for refusing to enforce a collective bargaining agreement arbitration decision reinstating a pilot who had refused to take an alcohol test.  The court explained that the public policy exception derived from Supreme Court precedent in *W.R. Grace & Co. v. Local Union 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 766 (1983):

> "[i]f the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it."
> The Court next claimed for the judiciary, not the arbitrator, the power

> to determine questions of public policy. The theory behind this non-LMRA (and non-RLA) exception to deference is the same as for the refusal of courts to enforce any contract that violates public policy: A court will not assist a party's violation of public policy by using its powers to enforce an agreement contrary to the public interest.

*Id.* (Citations omitted). Although the court eventually determined the arbitrator's award should be enforced despite Continental's public policy objection, the court noted that the Supreme Court had reaffirmed a narrow public policy right to vacate awards as recently as the unanimous decision in *Eastern Associated Coal Corporation v. United Mine Workers of America,* 531 U.S. 57, 67 (2000). Given the strong and explicit public policy against waiver of substantive employee statutory rights, this Court should vacate the AAA award, and invalidate that portion of the arbitration policy which requires AAA arbitration. *See, e.g.* 29 C.F.R. §825.220(d)("Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA."); 29 U.S.C. §626(f)(ADEA non-waiver provision); *see also, In re: Poly-America, L.P.,* 262 S.W.3d 337 (noting courts view anti-retaliation provisions of Worker's Compensation laws to be non-waivable).

      WHEREFORE, PREMISES CONSIDERED, Ameser prays the Court vacate the Award, and either remand the matter for arbitration with such procedural safeguards to allow the selection of an impartial arbitrator with a proven track record of fair decisions, or void the arbitration agreement as against public policy and being fraudulently induced, and allow Ameser to proceed *de novo* in court.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: /s/ John H. Crouch, IV
     John H. Crouch, IV
     State Bar No. 00783906

3109 Carlisle Street, Suite 200
Dallas, TX 75204
(214) 969-9099 - Telephone
(214) 953-0133 - Fax

**ATTORNEYS FOR PLAINTIFF
JOHN AMESER**

### Certificate of Service

     I hereby certify that on March 29, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system should automatically send a "Notice of Electronic Filing" to the following listed attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. Such attorney(s) may also be served via any additional means listed below.

| | |
|---|---|
| Jay Wallace<br>8080 N. Central Expressway<br>Suite 1300, L.B. 50<br>Dallas, Texas   75206-1838 | **Via electronic service** |

       /s/ John H. Crouch IV
     John H. Crouch